UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FIFTY LIBERTY STREET, LLC,

                              Plaintiff,

           -vs-                                        07-CV-20-JTC

EUREKA PETROLEUM, INC., TIBAROM, INC.,
PEANUT OIL, LLC, SAMUEL E. PEARSON, III,
and DEBORAH PICKETT,

                              Defendants.

---

In this diversity action for breach of lease, plaintiff Fifty Liberty Street, LLC ("Fifty Liberty") moved for partial summary judgment on its claims against defendants Peanut Oil, LLC, Samuel E. Pearson, III, and Deborah Pickett for unpaid past due rents and lost future rents under a written lease assignment. Peanut Oil, Mr. Pearson, and Ms. Pickett cross-moved for summary judgment in their favor dismissing the action against them. At oral argument on July 2, 2008, the court was advised that Peanut Oil has filed a petition for bankruptcy, limiting the relief sought by way of the pending motions to the individual defendants. *See* 11 U.S.C. § 362 (Bankruptcy Code automatic stay provisions).

For the following reasons, and to the extent set forth in the ruling below, plaintiff's motion is granted, and defendants' motion is denied.

## **BACKGROUND**

In September 2004, Fifty Liberty purchased a parcel of improved commercial real estate at 50 Liberty Street, Batavia, New York, from Sovereign JF, LLC ("Sovereign"), a California company. As part of the purchase, Sovereign assigned to Fifty Liberty all rights

and interest under a lease with Tibarom, Inc., and its wholly owned subsidiary Eureka Petroleum, Inc. (the "Lease"), which had a 25-year term commencing on October 27, 2003, and expiring on October 26, 2028 (*see* Item 8, Ex. A, § 3(A)). Tibarom and Eureka occupied the premises as co-tenants, and Eureka operated a Jiffy Lube® service center at the premises under a franchise agreement with Jiffy Lube International, Inc., dated October 20, 2003 (*see* Item 33, Ex. F).

Section 10 of the Lease governs "Assignment and Subletting," and provides in part:

> **A.    Lessee's Assignment.**  Lessee's interest in this Lease may be assigned to any third person or entity without the prior written consent of Lessor, provided, however, that Lessor agrees that the assignee is a "qualified" Jiffy Lube franchisee. For purposes of this Lease Agreement a franchisee shall be deemed qualified if the proposed assignee's financial condition, experience and revenues are equal to or greater than Lessee's.

(Item 8, Ex. A, § 10(A)).

On May 2, 2005, Eureka and Tibarom entered a series of complex written agreements with Peanut Oil, and Mr. Pearson and Ms. Pickett individually, designed to accomplish the transfer of certain assets from Eureka to Peanut Oil pursuant to a lengthy "Asset Sale Agreement" (*see* Item 48, Ex. C). Among the assets involved in the sale were Eureka's leasehold and franchise interests in the Jiffy Lube service center at the 50 Liberty Street premises, as well as similar interests in Jiffy Lube franchises at several other leased locations in New York and Pennsylvania (*see id.*, Schedule C).

Of primary importance to the dispute in this case, as presently framed, the parties to the asset sale executed a "Lease Assignment and Assumption Agreement," which identifies Eureka and Tibarom as "Assignors," and Peanut Oil, Pearson, and Pickett collectively as "Assignees" (Item 8, Ex. B. p. 1). This document specifically provides that

the Assignees agree to "assume[ ] all of the Assignors' obligations and liabilities now incurred or accrued or hereafter accruing or arising with respect to the Leases, including, but not limited to, the obligation to pay all rents . . ." (*id.* at ¶ 2).  It was signed by Jeffrey E. Langan, Esq., on behalf of Assignors Eureka and Tibarom, and by Mr. Pearson (both individually and as Managing Member of Peanut Oil) and Ms. Pickett (individually) on behalf of the Assignees (*see id.* at p. 3).

Further related to the May 2005 asset transfer, Eureka and Peanut Oil entered an "Assignment of Franchise Agreement" under which Eureka assigned to Peanut Oil its rights and obligations to operate the Jiffy Lube franchise at 50 Liberty Street pursuant to the October 2003 franchise agreement with Jiffy Lube International (*see* Item 33, Ex. E).  This document was signed by Mr. Langan on behalf of Eureka as "Assignor;" by Mr. Pearson on behalf of Peanut Oil as "Assignee;" and by Kevin M. Lyng, Vice President of Jiffy Lube International, as "Franchisor" (*id.*, Ex. E, p. 3).  In addition, the document was signed by Paul Morabito, Sam Morabito, Edward Bayuk, and Mr. Langan as the sole stockholders of Eureka, and by Mr. Pearson as sole stockholder of Peanut Oil, acknowledging their "agreement to be bound, individually, by the provisions of the foregoing Assignment" (*id.* at pp. 3 and 4).  Peanut Oil took possession of the leasehold premises in May 2005, and assumed operation of the Jiffy Lube franchise facility.

Eureka and Peanut Oil subsequently entered a series of five addenda to the Asset Sale Agreement to amend certain terms and provisions, and to provide for Peanut Oil's purchase of the outstanding stock of Tibarom (*see* Item 48, Exs. D through H).  The

addenda were executed by the Morabitos, Bayuk, and Langan, along with Arcadia Living Trust, as the sole shareholders of the Tibarom stock (*id.*).

Meanwhile, shortly after Peanut Oil took possession of the premises, Fifty Liberty's Massachusetts counsel Craig A. Ciechanowski, Esq., sent Eureka a series of letters advising that Fifty Liberty objected to the "proposed assignment" (Item 33, Ex. B; *see also id.* at Exs. C & D). As indicated in this correspondence, on at least two occasions in June and July 2005, Fifty Liberty requested information from Eureka to show that certain "very specific requirements" had been met in order for the assignment of the Lease to be considered effective, but as of June 2006, Fifty Liberty had not received that information (*id.*, Ex. B). In August 2006, Fifty Liberty advised Eureka that the rent payment made by Peanut Oil for the month of July 2006 was "being accepted for use and occupancy only without waiving any of the lessor's rights against the tenant." (*Id.*, Ex. C).

Peanut Oil continued to occupy the premises and operate the Jiffy Lube service center at 50 Liberty Street until early November 2006, when the rent became three months in arrears, the franchise agreement was terminated (*see* Item 33, Ex. G), and the premises was abandoned.

Fifty Liberty commenced this action in January 2007 against Eureka, Tibarom, and Peanut Oil, and filed an amended complaint as of right in March 2007 to add Mr. Pearson and Ms. Pickett as defendants (Item 8). Fifty Liberty alleges in Counts I, II and III of the amended complaint that the failure of Eureka and Tibarom to pay the rents due under the Lease, as well as the "Purported Assignment" to Peanut Oil, Mr. Pearson, and Ms. Pickett (the "Assignee Defendants"), constitutes material breach and default of the Lease resulting

in damages for past and future rents. In Counts IV and V, Fifty Liberty alleges alternatively that if the "Purported Assignment" is valid, then Peanut Oil, and Mr. Pearson and Ms. Pickett individually, are liable for the breach.

Peanut Oil, Pearson, and Pickett answered the amended complaint (*see* Item 12), and subsequently filed a third-party complaint against Arcadia Living Trust, Salvatore Morabito, Edward Bayuk, Jeffrey Langan, and Tibarom California, Inc. (Item 17; amended upon consent, Item 48).[1] Peanut Oil, Pearson, and Pickett allege that these third-party defendants breached the terms of the May 2005 Asset Sales Agreement and the addenda in several material respects, and seek the contractual remedies of recission (First Cause of Action), damages (Second Cause of Action), and indemnification (Third Cause of Action).

Fifty Liberty now moves for partial summary judgment in its favor on its claims against Pearson and Pickett on the ground that there are no genuine issues of material fact with respect to Pearson's and Pickett's obligations as assignees for unpaid past due rents and lost future rents under the Lease. Pearson and Pickett respond that there are disputed issues of fact regarding their obligations under the Lease, as evidenced by Fifty Liberty's rejection of the assignment, specific language in the Lease authorizing assignment only to qualified Jiffy Lube franchisees, and the third-party action for recission of the Asset Sales Agreement. Pearson and Pickett also cross-move for summary judgment in their favor dismissing the claims asserted against them in Counts IV and V of the amended complaint.

---

[1] As reflected by the court docket, neither Eureka nor Tibarom answered the amended complaint, but Tibarom answered the amended third-party complaint (*see* Item 53).

For the reasons that follow, plaintiff's motion for partial summary judgment is granted, and defendants' cross-motion for summary judgment is denied.

## DISCUSSION

**I.      Summary Judgment**

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 255 (1986)).

In a case like this one, where the court is called upon to interpret the rights and obligations of parties to a contract, summary judgment may be appropriate "when the contractual language is unambiguously in conformity with one side's interpretation, . . . and extrinsic evidence of the contracting parties' intentions cannot be considered in interpreting the contract . . . ." *Giles v. City of New York*, 41 F. Supp. 2d 308, 315-16 (S.D.N.Y. 1999) (citing *Chock Full O'Nuts Corp. v. Tetley, Inc.*, 152 F.3d 202, 204 (2d Cir. 1998); *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993)). If the contract language is found to be ambiguous, the court may consider extrinsic evidence of the parties' intent, and summary judgment still may be appropriate if, construing both the contract ambiguity and the extrinsic evidence against the movant, the court finds that the movant "would prevail under any reasonable interpretation of the contract." *Giles*, 41 F.

Supp. 2d at 316. "In sum, while contract ambiguity does not create a per se rule against summary judgment, it does add extrinsic evidence to the pool of evidence that must be sufficiently one-sided to make summary judgment appropriate." *Id.*

## II.     The Lease Assignment and Assumption Agreement

It is a well-established principle of New York landlord-tenant law that, due to the privity of contract which arises out of a written lease assumption agreement, an assignee of a lease who assumes or agrees to perform the covenants and conditions of the lease generally is liable to the lessor for their performance. N.Y. JUR LANDLORD § 774 (citing *Mann v. Ferdinand Munch Brewery*, 225 N.Y. 189 (1919), and *Zinwell Co. v. Ilkovitz*, 83 Misc. 42, 144 N.Y.S. 815 (1st Dep't 1913)); *see also Frankel v. Tremont Norman Motors Corp.*, 21 Misc.2d 20, 193 N.Y.S.2d 722 (N.Y.Sup.Ct. 1959) ("It is axiomatic that an expressed covenant made by an assignee to assume the lease binds him thereafter by privity of estate as well as privity of contract with the landlord."), *aff'd*, 10 A.D.2d 680, 197 N.Y.S.2d 576 (1st Dep't), *aff'd*, 8 N.Y.2d 901 (1960).  In addition, where the assignee enters an express agreement to assume performance of the obligations in the lease, takes possession of the premises, and holds itself out as the tenant by paying rent, utilities, taxes, etc., New York courts will place the assignee "in the same position as the original tenants, making it liable from the time of the assignment until the end of the term for breaches of any covenants in the lease by the tenants . . . ." *Lupoli v. Venus Laboratories, Inc.*,  252 A.D.2d 544, 544-45, 675 N.Y.S.2d 884, 884 (2d Dep't 1998) (citing *Mann*, 225 N.Y at 196); *see also Barr v. Country Motor Car Group, Inc.*, 288 A.D.2d 867, 868, 732

N.Y.S.2d 619, 620 (4th Dep't 2001) (where lease was validly assigned, assignees assumed obligations of assignor, including payment of rent for entire lease period).

As discussed above, the assignment of the Lease for the 50 Liberty Street premises was accomplished on May 2, 2005, by the signing of the Lease Assignment and Assumption Agreement in connection with the execution of the contract documents related to the contemplated transfer of assets from Eureka to Peanut Oil. The Lease Assignment and Assumption Agreement was signed by Mr. Pearson, both in his individual capacity and in his capacity as Managing Member of Peanut Oil, and by Ms. Pickett in her individual capacity. The agreement clearly refers to Peanut Oil, Pearson, and Pickett collectively as "Assignees," and specifically provides for the Assignees to assume all of the Assignors' obligations and liabilities with respect to the Lease–including the obligation to pay all rents (*see* Item 8, Ex. B, at p. 1 & ¶ 2).

Pearson and Pickett do not dispute these facts. Instead, they contend that they cannot be held liable for the default because plaintiff, as landlord, did not give prior written consent to the assignment, as required under Section 10 of the Lease. According to Pearson and Pickett, plaintiff accepted rent from Peanut Oil on a monthly basis for use and occupancy only, continued to reject and object to the assignment throughout Peanut Oil's occupancy of the premises (*i.e.*, from May 2005 to November 2006), and never agreed that Peanut Oil was a "qualified" Jiffy Lube franchisee.

This contention must be rejected. Commercial leases often contain provisions restricting assignment which courts in New York have regularly construed to be for the protection of the landlord, not for the protection of the tenant or the assignee. As explained

by the Appellate Division in *Caridi v. Markey*, 148 A.D.2d 653, 539 N.Y.S.2d 404 (2d Dep't 1989):

> Recognizing the need to protect a landlord's substantial interest in controlling the assignability of leases, it is the well-established law of this State that in the absence of a clause prohibiting the unreasonable withholding of consent, a landlord may refuse to consent to the assignment of a lease which contains an express restriction against assignment without the landlord's consent.

*Id.*, 148 A.D.2d at 654, 539 N.Y.S.2d at 404; *see also Mann Theatres of California v. Mid-Island Shopping Plaza Co.*, 94 A.D.2d 466, 471, 464 N.Y.S.2d 793, 798 (2d Dep't 1983) ("Restrictions against alienation provide landlords with the opportunity to assess the financial responsibility and 'business character' of any proposed assignee or subtenant, as well as the legality of the proposed use and the nature of the occupancy."). Thus, it has long been the rule in New York that "[a] person in possession who holds himself out to the landlord as assignee is estopped from denying the assignment . . . ." *Mann*, 225 N.Y at 193 (citing *Carter v. Hammett*, 18 Barb. 608 (N.Y.Sup.Ct. 1851)).

Pearson and Pickett also argue that, since they were not Jiffy Lube franchisees in any respect as individuals, they could never have been accepted as "qualified" assignees under the Lease terms. However, as discussed above, both Pearson and Pickett executed the Lease Assignment and Assumption Agreement as "Assignees" and, according to the unambiguous terms of the agreement, assumed all of the original tenants' obligations and liabilities, including the obligation to pay all rents. In addition, by executing the separate Assignment of Franchise Agreement, Pearson agreed (as the sole stockholder of Peanut Oil) to be bound individually by the terms of the assignment. These actions, considered together with the undisputed evidence of Peanut Oil's occupancy of the premises for the

18-month period from May 2005 through October 2006, placed the assignees in the same position as the original tenants, making them liable from the time of the assignment until the end of the term for breaches of any covenants in the lease–including the covenant to pay rents. *See Lupoli v. Venus Laboratories, Inc.*, 252 A.D.2d 544, 544-45, 675 N.Y.S.2d 884, 884 (2d Dep't 1998) (citing *Mann*, 225 N.Y. at 196).

Accordingly, the court finds that the language of the contractual documents at issue "is unambiguously in conformity with [plaintiff]'s interpretation," *Giles*, 41 F. Supp. 2d at 315, and plaintiff is therefore entitled to partial summary judgment in its favor on Counts IV and V of the complaint, finding Pearson and Pickett individually liable for the breach of the Lease.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for partial summary judgment (Item 21) is granted to the extent it seeks a ruling that defendants Pearson and Pickett are liable for breach of the Lease for the premises at 50 Liberty Street, Batavia, New York.[2] For the same reasons, defendants' cross-motion for summary judgment (Item 28) is denied.

A telephone conference is scheduled for August 28, 2008, at 10:30 a.m. to discuss a schedule for further proceedings in the case.

---

[2]Plaintiff also contends that, because the damages for breach are readily calculable pursuant to various formula provisions in the Lease, the court's order granting partial summary judgment should include an award against these defendants in the amount of $1,147,056.82. The court will defer its ruling on this aspect of the relief sought by way of plaintiff's motion, pending further proceedings with respect to the third-party complaint against Arcadia, Morabito, Bayuk, Langan and Tibarom.

So ordered.

       \s\ John T. Curtin
       JOHN T. CURTIN
       United States District Judge

Dated:   August   5   , 2008
p:\pending\2007\07-20.july14.08